IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 15, 2015

**CORY SHANE ROLLINS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 95675     Bob R. McGee, Judge**

_____

**No. E2015-00774-CCA-R3-PC – Filed January 12, 2016**

_____

The Petitioner, Cory Shane Rollins, appeals from the denial of his petition for post conviction relief, wherein he challenged his jury convictions for aggravated robbery, evading arrest, and driving under the influence. On appeal, the Petitioner raises the following ineffective assistance of counsel claims: (1) whether trial counsel failed to convey a plea offer made by the State; and (2) whether trial counsel failed to adequately apprise him of his right to testify. After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Cory Shane Rollins.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Charme P. Allen, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

Following a jury trial, the Petitioner was convicted by a Knox County jury of aggravated robbery, a Class B felony; evading arrest, a Class D felony; and driving under the influence (DUI), a Class A misdemeanor. See Tenn. Code Ann. §§ 39-13-402, -16-603, 55-10-401. The trial court sentenced him as a career offender to consecutive terms of thirty years and twelve years for the aggravated robbery and evading arrest convictions, respectively. A concurrent sentence of eleven-months and twenty-nine days

was imposed for the DUI. This court affirmed the Petitioner's convictions and effective forty-two-year sentence on direct appeal. See State v. Cory Shane Rollins, No. E2008-01407-CCA-R3-CD, 2010 WL 342653 (Tenn. Crim. App. Feb. 1, 2010), perm. app denied (Tenn. June 17, 2010).

At trial, the evidence in the light most favorable to the State showed that a truck, substantially similar to the Petitioner's, drove by Fusion Tanning Salon in Knoxville several times on the evening of November 17, 2006. Rollins, 2010 WL 342653, at *1. Shortly thereafter, a white male, dressed identically to the Petitioner and matching his general description, entered the tanning salon, brandished a knife, and held the knife to the store employee's back as he demanded money from the cash register. Id. After grabbing the money, the Petitioner left the tanning salon and drove away. Id.

Approximately, twenty to thirty minutes later, an officer attempted to stop the Petitioner on the interstate, who, according to the officer, appeared to be driving under the influence. Rollins, 2010 WL 342653, at *2. The Petitioner exited the interstate, drove up an embankment, jumped out of the vehicle, and ran into the woods. Id. At some point, the police dog was released. Id. After the Petitioner was apprehended, the dog "latched onto" him and bit him several times in the arms, legs, and buttocks. Id. Once the dog freed the Petitioner, he was escorted back to the police vehicle. Id. The officer observed that the Petitioner smelled of alcohol and was unsteady on his feet. Rollins, 2010 WL 342653, at *3.

The Petitioner was arrested and transported back to the tanning salon for identification purposes. Rollins, 2010 WL 342653, at *3. The tanning salon employee positively identified the Petitioner as the man who robbed her at knife-point. Id. Following his arrest, the Petitioner's vehicle was inventoried and a silver-bladed knife, approximately four inches long or less with a black handle, was found inside. Id.

For his dog-bite injuries, the Petitioner was treated at St. Mary's Hospital before being taken to the police station. Rollins, 2010 WL 342653, at *7. The Petitioner was given several bottles of water and signed a waiver of rights form before making statements to a police officer. Id. In the interview, the Petitioner admitted that he had been drinking and that he had a drug problem. He also stated that he "probably" smoked marijuana the day of the robbery and that he tried to buy cocaine on the night of the robbery, but he "didn't get a chance to." Id. at *8. The Petitioner invoked his right to an attorney after just ten minutes of questioning. Id. at *7.

Following his unsuccessful direct appeal, the Petitioner filed a timely pro se petition for post-conviction relief. Counsel was appointed, and an amended petition was filed. A second amended petition was filed after substitute counsel was appointed. In the second amended petition, the Petitioner claimed that he received the ineffective

-2-

assistance of counsel due to trial counsel's failure to communicate a favorable plea offer to him and because trial counsel erroneously advised him not to testify on his own behalf at trial. Both the Petitioner and trial counsel testified at the post-conviction hearing regarding these two allegations of ineffectiveness.

The Petitioner confirmed that trial counsel met with him and reviewed the facts of his case and the evidence against him. According to the Petitioner, trial counsel never discussed any plea negotiations with him, although the Petitioner did not recall ever specifically asking "her about the possibility of resolving [the case] with a plea offer[.]"

The Petitioner did recall hearing an eyewitness testify against him at the preliminary hearing. Yet, the Petitioner denied ever being present at the tanning salon on November 17, 2006. The Petitioner claimed that his girlfriend wanted him to go to a wedding that day, but he declined and "ended up going and buying some dope." When the officer turned on his blue lights and tried to stop the Petitioner on the interstate, "[he] bugged out and . . . just took off[.]" He asserted that he did so because he did not have a valid driver's license, was in violation of an Anderson County probationary sentence, and had been using drugs. His flight had nothing to do with the tanning salon robbery, according to the Petitioner.

The Petitioner testified that trial counsel advised him not to testify in his own defense due to his prior criminal convictions. The Petitioner stated that he had never had a jury trial before, that all of his prior convictions had resulted from plea agreements. However, the Petitioner admitted that he knew it was ultimately his decision about whether to testify, and in the end, he relied on the advice of counsel and did not testify. He did not recall ever discussing with trial counsel what his potential testimony might have been, although he thought they did discuss trial strategy. The Petitioner claimed that he would have "like[d] to have at least told [his] part . . . of the story" in order to explain why he "ran from the police" but that he did not commit the robbery, which "would have made sense" to the jury, in his opinion.

On cross-examination, the Petitioner could not remember participating in a Momon[1] hearing, although he did not deny that it was possible one occurred. The Petitioner agreed that his prior criminal history, the reason for trial counsel's advice not to testify, included convictions for escape, evading arrest, reckless endangerment, theft of property over $1,000, burglary of an automobile, three counts of burglary, and four counts of aggravated burglary.[2] The Petitioner claimed that "[he'd] take a plea before . . .

---

[1] Referring to the prophylactic procedure outlined in Momon v. State, 18 S.W.3d 152 (Tenn. 1999), which is designed to ensure that a defendant's waiver of his right to testify is voluntary, knowing, and intelligent.

[2] From the direct appeal, it appears that the Petitioner actually had seven convictions for aggravated

"get[ting] a bunch of time" due to his "bad" record. According to the Petitioner, "[i]t made more sense to get out" of jail earlier by taking a plea deal even if he did not commit the robbery. Contrary to his earlier testimony, the Petitioner asserted that he had asked trial counsel "a few times" to inquire about a plea offer.

Trial counsel testified that she had no record of any plea discussions ever taking place in this case. While she had a large volume of cases at the time she represented the Petitioner, she did recall meeting with him multiple times to discuss the case and filing a motion to suppress his statement as involuntary. According to trial counsel, in the Petitioner's statement, he admitted to evading the police, and while he did not admit to perpetrating the robbery, he made "some comments that were . . . difficult to understand" and indicative of committing the offense, in her opinion. She characterized the Petitioner's statement as "harmful." She opined, however, that if she "hadn't had such a caseload, [she] would have done more[,]" including discussing "possible resolutions" with the prosecutor, obtaining the Petitioner's medical records, considering hiring an expert witness for the suppression hearing, and interviewing more witnesses, specifically the tanning salon employee and the other individual present. She acknowledged that she did have an investigator assisting her with the Petitioner's case.

Trial counsel could not recall whether she had any conversation with the Petitioner about whether he should testify, although it was her normal practice to do so. If she expected a client to take the stand, she would prepare that individual to be cross-examined. She had no recollection of any such preparation with the Petitioner.

When asked how she "plan[ned] to deal with the positive identification by" the tanning salon employee, trial counsel replied "[j]ust through cross-examination[.]" Trial counsel did remember calling a defense witness at trial that challenged the employee's identification of the Petitioner. She could not recall wanting to call any other witnesses on the Petitioner's behalf but being unable to do so. If she had advised the Petitioner not to testify, she opined that such advice was likely based upon "his demeanor." The Petitioner did declare his innocence of the robbery to trial counsel but admitted that he was running from the police that day.

On cross-examination, trial counsel stated that she did not recall the Petitioner ever asking her to seek a plea offer. She continued, "I believe that if he had ask[ed] me to get an offer, I would have asked for one." She also stated that such a request would usually be documented in some form and acknowledged that, because no offer was ever made, she had nothing to communicate to the Petitioner in that regard.

---

burglary rather than four counts of aggravated burglary and three counts of burglary.

Trial counsel further elaborated that her advice to the Petitioner not to testify was also likely based upon his criminal record, which consisted of twelve convictions. Trial counsel testified that she attempted to have those convictions excluded by a pretrial motion in limine. But, she was unsuccessful, and the trial court ruled that the Petitioner could be cross-examined with those convictions if he chose to testify. She agreed that "there wasn't much defense to the evading arrest and DUI" charges and that the ultimate decision of whether to testify rested with the Petitioner. What any further preparation on her part would have revealed, she conceded, was "just speculation[.]"

The post-conviction court denied the Petitioner relief, concluding that the Petitioner had failed to establish his claims of ineffective assistance of counsel. This appeal followed.

ANALYSIS

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at

689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008) (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Here, the post-conviction court rejected the Petitioner's allegations. In concluding that trial counsel rendered effective performance to the Petitioner, the post-conviction court reasoned as follows:

> Well, first of all, with respect to a plea agreement, or the lack of a plea agreement, the finding of the [c]ourt is, that no plea offer was made; therefore, there was nothing [trial counsel] could communicate to the [Petitioner] about a plea agreement, nothing to talk about, no way to decide what to—to determine whether to encourage him to take a plea offer or not to take the plea offer. There simply wasn't a plea offer. And, of course,

there is no [c]onstitutional right to have a plea offer. A plea bargain is not a [c]onstitutional right.

. . . .

Now, the time may come when effective assistance of counsel will—will include efforts to get a plea offer, but at this point, the state of the law is, there is no [c]onstitutional right to the plea offer, and the failure for a plea offer to be made does not violate the [Petitioner's] constitutional rights.

. . . .

No prosecutor was going to make any kind of offer that [the Petitioner] was going to find attractive, given his record and given the state of the proof that they had in this case, apparently, a pretty good description of the robber and a pretty quick apprehension and an identification by the victim, the prosecutor knew he had a pretty good case.

And given [the Petitioner's] criminal record, no prosecutor worth his or her salt was going to offer anything that was going to put [the Petitioner] back out on the street anytime soon. So there's no . . . basis for any finding that even if a plea offer had been made, that it would have been anything that [the Petitioner] would have found attractive.

So, again, the [c]ourt finds no . . . [c]onstitutional violation with respect to the plea offer.

With respect to the advice not to testify. This is always a strategic decision that has to be made. And in [the Petitioner's] case, given his criminal record, the advice not to take the stand was certainly reasonable, certainly within an acceptable standard of performance by the prosecutor.

The [c]ourt does understand that [trial counsel] was very busy, harried . . . at the time, covered up with cases. . . . But there's certainly nothing to suggest that [trial counsel's] advice to [the Petitioner] not to testify, if, in fact, she did give that advice, would not, in any way, fall below the standard of effective assistance of counsel.

. . . And, certainly, the advice not to testify was extremely reasonable under the circumstances.

So [trial counsel] did the only thing she could do. She just tried to rebut the State's case. And the State had a good case and it just didn't work. The jury found in favor of the State.

## A. Plea Negotiations

In the second amended petition for post-conviction relief, the Petitioner asserted that his trial counsel rendered ineffective assistance when she failed to communicate a favorable plea offer to him. However, when the proof at the post-conviction failed to

establish that any offer had been made by the State, post-conviction counsel argued in summation, "[T]here was never an offer made, but neither did [trial counsel] . . . seek out an attempt to get some type of a reasonable offer that may have given [the Petitioner] at least an option to resolve the case more favorably than how it proceeded." The post-conviction court, in its oral ruling, determined that there was no plea agreement to communicate to Petitioner and that the Petitioner had no constitutional right to enter into plea negotiations with the prosecution.

"There is . . . no obligation on the State to offer any benefit or advantage to a defendant by reason of his pleading guilty." Harris v. State, 875 S.W.2d 662, 666 (Tenn. 1994). Nothing compels the state to enter into plea negotiations, and an accused does not have a constitutional right to engage in plea bargaining. See Mabry v. Johnson, 467 U.S. 504, 507 (1984); State v. Turner, 919 S.W.2d 346, 350 n.2 (Tenn. Crim. App. 1995). However, a defendant is entitled to the effective assistance of counsel throughout plea negotiations. See Nesbit v. State, 452 S.W.3d 779, 787 (Tenn. 2014) (citing Missouri v. Frye, -- U.S. --, 132 S.Ct. 1399, 1407-09 (2012)), cert. denied, Nesbit v. Tennessee, 135 S.Ct. 1853 (Apr. 20, 2015). Trial counsel's complete failure to communicate a plea offer to a defendant constitutes deficient performance, and the defendant's ignorance of a plea offer undermines confidence in the outcome of the prosecution. See Harris, 875 S.W.2d at 665-66.

On appeal, the Petitioner states the following regarding the issue in the argument section of his appellate brief:

> In the present case, the Petitioner must acknowledge that the evidence presented at the post-conviction hearing did not establish that the State made a plea bargain offer which trial counsel failed to convey to the Petitioner, or that the Petitioner specifically expressed interest to trial counsel in a guilty plea resolution to the aggravated robbery charge. The Petitioner's testimony acknowledged criminal responsibility for evading arrest but denied any involvement in or responsibility for the robbery.

This is the entirety of his argument on the subject, and he is essentially conceding that the post-conviction court's ruling on the topic is correct. See Tenn. R. Ct. Crim. App. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). As the post-conviction court found, nothing indicates that the State made a plea offer to the defense or was even willing to negotiate with trial counsel. Trial counsel testified that she had neither a record of a plea deal ever being offered by the State nor a request from the Petitioner that she seek a plea deal.

Moreover, the Petitioner's brief does not raise any issue regarding whether trial counsel's failure to engage in plea negotiations with the State constituted ineffective assistance of counsel, and appellate review of the issue is, therefore, waived. See Tenn. R. App. P. 13(b) (providing that "review generally will extend only to those issues presented for review"); see also Tenn. R. App. P. 27(a)(7) (stating that appellate briefs shall contain "the contentions of the appellant with respect to the issues presented, the reasons therefor, including the reasons why the contentions require appellate relief").

The post-conviction court also found that it was unlikely the State would have made an "attractive" offer to the Petitioner, noting the strength of the State's case regarding the robber's identity and the Petitioner's prior criminal record. We agree with the post-conviction court's conclusion that that the Petitioner has not shown that he was prejudiced by the failure of his counsel to pursue an offer of settlement, and the Petitioner is not entitled to relief on this issue. See, e.g., Torrey L. Frazier v. State, No. E2012-01751-CCA-R3-PC, 2013 WL 5964011, at *8 (Tenn. Crim. App. Nov. 6, 2013), perm. app. denied (Tenn. May 14, 2014); State v. Ransom Thomas Smith, C.C.A. No. 89-85-III, 1990 WL 78935, at *2 (Tenn. Crim. App. June 13, 2000) (both cases holding, under similar circumstances, that the petitioner therein had failed to establish ineffective assistance of counsel).

## B. Right to Testify

The Petitioner contends that trial counsel was ineffective for advising him not to testify in his own defense. He submits that, despite his criminal record, he "was the only witness available to the defense to directly rebut the State's allegations that he went to the Fusion Tanning Salon and robbed" the store's employee.

Trial counsel was aware of the Petitioner's criminal record, which included twelve prior convictions, eight of which were burglary-related, and filed a motion in limine to exclude proof of those prior convictions if the Petitioner chose to testify. That motion was unsuccessful. Although she could not recall any discussions about whether the Petitioner should testify, she stated that any advice not to do so was likely because of the Petitioner's record and demeanor. The Petitioner claimed he wanted to explain to the jury why he was fleeing from the police, but that was already accomplished through his statement to the police. Trial counsel agreed that "there wasn't much defense to the evading arrest and DUI" charges and that she "plan[ned] to deal with the positive identification by" the tanning salon employee "through cross-examination[.]" Moreover, trial counsel did present a defense witness to challenge the employee's identification of the Petitioner.

The evidence does not preponderate against the post-conviction court's conclusion that trial counsel properly advised the Petitioner of his right to testify and merely

-9-

informed him of a possible drawback of his potential testimony. Our review of the <u>Momon</u> hearing reflects that the Petitioner affirmatively stated that he had discussed his decision about whether to testify with trial counsel and that he alone made his decision not to testify. This was confirmed by testimony at the post-conviction hearing. At the post-conviction hearing, the Petitioner stated that he knew that if he did take the stand and testify, then his prior criminal record might be used against him. Trial counsel stated that the decision of whether to testify ultimately rested with the Petitioner, and the Petitioner acknowledged this tenet. The Petitioner is not entitled to relief on this issue either.

<u>CONCLUSION</u>

Based upon the foregoing, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE